UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**RAYMOND ALLAN STOOS,**

Debtor.

Case No. **12-60252-13**

### *MEMORANDUM OF DECISION*

At Butte in said District this 17th day of January, 2017.

In this Chapter 13 case the Debtor filed objections to the Chapter 13 Trustee's Motion to sell property free and clear of liens under 11 U.S.C. § 363(f) (Document No. 217) (hereinafter "Trustee's Motion") and the Trustee's Final Application for Professional Fees and Costs of realtor Kyle Haynie ("Haynie") of Russell Country Realty (Doc. 223) ("Application"). A hearing on the Trustee's Motion and Application was held after due notice at Great Falls on January 6, 2017. The Debtor Raymond Allan Stoos ("Stoos") appeared and testified, represented by attorney Gary S. Deschenes of Great Falls. The Chapter 13 Standing Trustee Robert G. Drummond appeared in support of the Trustee's Motion and Application. Exhibits ("Ex.") A, B, and 11 were admitted into evidence. Without objection the Court took judicial notice of the entire file in the instant case, and of the file including a stipulation and agreement in another case, Case No. 11-62291-11 – Doc. 61. After the conclusion of the parties' cases-in-chief the Court heard argument of counsel, then took the Trustee's Motion and Application under advisement.

1

After review of the Motion and Application, the record and applicable law, this matter is ready for decision. Debtor's objections will be overruled, the Trustee's Motion will be granted; the Application to award Haynie a real estate commission in the amount of $3,420 for the sale of real property will be approved by separate Order.

This Court has jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). The Trustee's Motion to sell property free and clear of liens is a core proceeding under 28 U.S.C. § 157(b)(2)(N), and the Trustee's Application to pay a real estate commission for the sale is a core proceeding under § 157(b)(2).

## FACTS

Stoos filed a voluntary Chapter 13 petition commencing the instant case on February 28, 2012. Stoos is a contractor/developer and is the sole shareholder of S Bar S Construction, Inc. ("S Bar S"). S Bar S is the debtor in bankruptcy case No. 11-62291-11.[1]

Debtor's Schedule A filed on March 26, 2012, lists among several tracts of real property, Tracts 9 and 35 of Holter Lakeshore Subdivision, a/k/a 2930 Holter Lakeshore, Wolf Creek, Montana 59648, at a value of $250,000 ("Tracts 9 and 35"). Stoos testified that Tracts 9 and 35 are the last two properties remaining to be sold. One of those tracts is on the water and the second is above the lake. A house existed on one of the tracts but it burned down. Stoos testified that a regular septic system cannot be used on Tracts 9

---

[1] S Bar S's Chapter 11 plan was confirmed, and a final decree was entered closing that case on March 12, 2013.

2

and 35 because of the terrain. He used a dry septic system.

Mountain West Bank is listed on Schedule D as a creditor with secured claims. Mountain West Bank filed Proof of Claim No. 4 on May 31, 2012, asserting a secured claim in the amount of $176,791.59. The attachments to Proof of Claim 4 include a deed of trust making Tracts 9 and 35 security for a debt in the original amount of $225,000. Attachment No. 2 to Proof of Claim 4 is a supplement which states: "The amount that Debtor Ray Stoos owes Mountain West Ban, NA under loan number 26006545 is $13,903.64, plus some future costs and attorneys' fees which may be claimed." First Interstate Bank acquired Mountain West Bank and is its successor.

Several Plans were filed by the Debtor and have been confirmed. They provided that proceeds from the sale of Debtor's real properties would be sufficient to pay all creditors in full. Debtor has sold all of his real property except Tracts 9 and 35. Stoos retained approximately $43,000 from one sale of property instead of turning it over to the Chapter 13 Trustee as required. The Trustee has filed several motions to convert this case to Chapter 7 based on the Debtor's non-compliance, all of which were resolved.

A stipulation between the Chapter 13 Trustee and Debtor was filed on December 13, 2012, and approved on December 14, 2012. That stipulation required the Debtor to pay the Trustee $12,000, and that the Debtor would not receive a discharge unless his unsecured creditors are paid at least an additional $31,000. Debtor filed a modified Plan (Doc. 107) on December 17, 2012, to which the Trustee filed a consent, and that Plan was approved on January 4, 2013. That Plan had a 36-month term, and again provides that the

Debtor will turn over funds from the sale of his real property sufficient to pay the allowed unsecured claims at least $100,000.

On April 30, 2014, Debtor filed an application to employ Jason Westmoreland ("Westmoreland") and ReMax of Great Falls as real estate agent to sell Debtor's real property, including Lots 9 and 35, at commissions ranging from six percent (6%) to ten percent (10%). That application was approved. Westmoreland was awarded a $2,000 commission for the sale of property not including Lots 9 and 35, on September 16, 2014. Stoos testified that Westmoreland, as Debtor's realtor, sold all of his properties except for Tracts 9 and 35.

On September 25, 2014, the Debtor and Mountain West Bank filed a stipulation giving the Debtor an additional two years from September 30, 2014, to sell his real properties and pay Mountain West Bank from the proceeds. The Chapter 13 Trustee filed an objection, which was withdrawn after the Debtor filed a Second Amended Chapter 13 Plan (Doc. 179). The stipulation (Doc. 165) was approved, and the Second Amended Plan was confirmed on November 6, 2014. The latest confirmed Plan provided for a 56 month term for the Debtor to sell his real property and pay the secured creditors. Paragraph 2(b) of the confirmed Plan provides: "In the event the properties do not sell by September 30, 2016, the liened property will be surrendered to the appropriate secured creditors."

Ex. A is a buy sell agreement for Tracts 9 and 35 dated January 22, 2015, for the sum of $100,000 for cash. Stoos testified that First Interstate Bank would not approve

that sale and it did not take place. Ex. B is a buy sell agreement to sell Tracts 9 and 35 for $65,000 dated September 18, 2015. Stoos testified that he would have accepted that $65,000 offer if First Interstate Bank had accepted it, but First Interstate Bank did not, so that sale did not occur.

On December 8, 2015, the Chapter 13 Trustee filed a motion to compel Debtor to perform under the terms of the confirmed Plan. That motion (Doc. 199) alleges that the Debtor received offers for Tracts 9 and 35 in the amounts of $65,000 and $100,000, but failed to seek court approval for those sales, and failed to pay Mountain West Bank and other creditors. The Debtor filed an objection on the grounds he would resolve the Trustee's motion.

A stipulation (Doc. 206) between the Debtor, Chapter 13 Trustee, and First Interstate Bank, successor to Mountain West Bank, was filed and approved on January 19, 2016. That stipulation (Doc. 206) provides that Tracts 9 and 35 are the only parcels of Debtor's real property remaining to be sold under Debtor's confirmed Plan. Paragraphs 7 and 8 of the stipulation refer to a stipulation between the Debtor and Mountain West Bank (Doc. 61 in Case No. 11-62291-11), which is not in the docket of the instant Chapter 13 case. In the S Bar S case, Mountain West Bank had a lien on property owned by S Bar S located on Sharon Drive in Great Falls. The stipulation in the S Bar S case provides in part: "Debtor [S Bar S] shall pay this creditor in full from the sale of real property owned by Raymond A. Stoos, pursuant to his Amended Chapter 13 Plan (dated May 7, 2012) which was confirmed on May 22, 2012." Doc. 206, para. 8.

The stipulation at Doc. 206 provides that, in return for the withdrawal of the Chapter 13 Trustee's motion for order compelling Debtor to perform under the confirmed Plan, Stoos "shall procure a sale of real property selling the remaining parcel [Tracts 9 and 35] for at least $100,000 prior to June 30, 2016. Paragraph 15 of Doc. 206 concludes: "The parties further stipulate and agree that if the Debtor fails to procure the sale of real property by June 30, 2016, the Trustee shall be entitled to procure a Buy Sell Agreement subject to the approval of the court for administration under the terms of the confirmed Plan." Debtor's attorney signed Doc. 206, and it was approved by this Court on January 19, 2016.

Ex. 11 is a listing agreement between Debtor and Westmoreland to sell Tracts 9 and 35 for $100,000. The term of Ex. 11 is from August 22, 2016, through August 31, 2017. Stoos testified that the Debtor received an offer for the purchase of Tracts 9 and 35 for $100,000 through Westmoreland, but that First Interstate Bank "drug its feet" and that buyer went away. The Debtor never filed a motion for approval of that sale. Stoos testified that he is not sure when he received the $100,000 offer for Tracts 9 and 35. He testified that he "is sure" that he filed a motion to sell Tracts 9 and 35 for $100,000. The docket in this case shows that he did not.

Stoos testified that he had a second offer for Tracts 9 and 35 for the sum of $65,000, but that First Interstate Bank rejected that amount. On cross examination Stoos was asked whether, if First Interstate Bank had accepted the $65,000 offer, it would have been an acceptable offer. He responded that if First Interstate Bank had accepted

6

$65,000 it would have been "OK," but that First Interstate Bank never did.

On September 9, 2016, the Chapter 13 Trustee filed an application to employ Haynie as realtor to market and sell Tracts 9 and 35. A listing agreement attached to that application shows a listing price of $59,900, and provides for a 6% commission. In accordance with this Court's usual practice the Trustee's application to employ Haynie was approved on September 12, 2016.

Haynie testified that he has worked as a realtor for 12 years and is a broker/owner of Russell Country Realty. Haynie earns annual education credits in real estate every year. His company has ten other independent real estate agents. Haynie has not sold lakefront property before, but he testified that he has sold 3 riverfront properties.

Haynie testified that he placed Tracts 9 and 35 on the multiple listing service, and he looked at comparable sales. Haynie testified that Tracts 9 and 35 include approximately 100 feet of waterfront. There is boat-only access to Tracts 9 and 35, Haynie testified, which increases the difficulty and expense of construction. In addition, Haynie testified, an owner of Tracts 9 and 35 cannot get a permit for a septic system because of the slope and terrain.

Haynie first listed Tracts 9 and 35 for $60,000 at the end of September 2016. He testified that he received one offer quickly for $55,000. He testified that the range of value for Tracts 9 and 35 is between $60,000 and $100,000, but because we currently are in the dead of winter there is little activity or interest. He testified that because Westmoreland had listed Tracts 9 and 35 for $100,000, and they did not sell, they were

7

overpriced.

Haynie testified that he called the Debtor's realtor Westmoreland and solicited bids for Tracts 9 and 35. Haynie explained that Westmoreland was the perfect person to call because he had the most knowledge of the properties and had tried to sell Tracts 9 and 35 for the Debtor. Haynie asked Westmoreland if he could find a buyer of Tracts 9 and 35 for $59,900 and Westmoreland said no.

From Westmoreland, Haynie received an offer for Tracts 9 and 35 of $55,000. Haynie rejected that offer, and testified that that prospective purchaser would not negotiate. Haynie testified that he called Westmoreland again and asked him if he had any other interested buyers. Westmoreland then came to Haynie with the pending offer on October 13, 2016.

On October 14, 2016, the Chapter 13 Trustee filed the pending Motion to sell Tracts 9 and 35 for the sum of $57,000 cash at closing, to Timothy and Mara Street free and clear of liens. The buy sell agreement filed with the Trustee's Motion provides for a closing date of November 30, 2016, which has come and gone, but Haynie testified that the Streets are still on board. The Trustee's Motion is based on the stipulation (Doc. 206), in which Debtor agreed that if he failed to procure a sale of the property by June 30, 2016, the Trustee shall be entitled to sell the property under the confirmed Plan. On October 28, 2016, the Debtor filed an objection to the Trustee's Motion on the grounds "that the purchase price is insufficient."

On November 17, 2016, the Chatper 13 Trustee filed the pending Application to

pay Haynie a real estate commission in the amount of $3,420 for the sale of Tracts 9 and 35, which works out to 6% of the $57,000 proposed sale price. Haynie testified that the $3,420 commission would be divided, with half going to the Streets' realtor, Westmoreland. The Debtor filed an objection on November 30, 2016, for the same reason that the $57,000 offer is insufficient. At the hearing Debtor clarified that his only objection to Haynie's commission is the proposed sale price.

      Haynie testified that he has tried to obtain backup offers for Tracts 9 and 35, but that there is not much interest or activity because it's winter and he has not had a phone call or email expressing interest. Haynie testified that in his opinion the $57,000 offer is fair because the market has proven it with a firm offer. Tracts 9 and 35 have been listed for sale for years and have not sold. Under cross examination Haynie testified that it is possible that a better offer could happen next Spring when more people would be looking for property on the water.

      Stoos testified that the $57,000 is underpriced, and that in his opinion the value of Tracts 9 and 35 ranges from $80,000 to $100,000. Stoos does not feel the $57,000 sale is right; he believes that he can sell Tracts 9 and 35 for more a higher price and pay more creditors.

      In response to questions from the Court the Debtor testified that there are an estimated $16,000 in taxes secured by liens on Tracts 9 and 35, and that First Interstate has a lien against Tracts 9 and 35 for a remaining approximately $16,000, or a total of $32,000 in debt secured by liens on Tracts 9 and 35.

**DISCUSSION**

Debtor's attorney admitted at the hearing that First Interstate Bank wants Tracts 9 and 35 sold, but argued that the $57,000 proposed sale price does not leave anything for creditors after paying First Interstate Bank's secured claim, realtors' commissions and trustee's fees, and taxes, and Debtor's attorney's fees.

A trustee may use, sell or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). Sale of all of Debtor's real property, including Tracts 9 and 35, is required under the terms of Debtor's confirmed Plan, after several modifications by the Debtor which were approved after notice and hearing. Among the modifications were a stipulation with Mountain West Bank giving the Debtor an additional 2 years to complete the sales. That period of time was extended further by the current confirmed Plan which gave the Debtor until September 30, 2016, to sell Tracts 9 and 35 by September 30, 2016, or the property would be surrendered to the secured creditor.

Under 11 U.S.C. § 1327(a) "the provisions of a confirmed plan bind the debtor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." *In re Quesnell* 18 Mont. B.R. 80, 89 (Bankr. D. Mont. 1999). The binding effect of confirmation gives res judicata effect to those issues that were decided, or could have been decided at the time of confirmation. *In re Pierce Packing Co.*, 13 Mont. B.R. 297, 307-08 (Bankr. D. Mont. 1994); *In re Kessner*, 10 Mont. B.R. 141, 142-43 (Bankr. D. Mont. 1991). Stoos' confirmed Plan, as modified, gave him

until September 30, 2016, to complete the sale of his properties. In this Court's view, Stoos is bound by the confirmed Plan and is not entitled to any further time to sell Tracts 9 and 35.

A later stipulation with the Chapter 13 Trustee, Doc. 206, provided that the Debtor would sell his property by June 30, 2016, after which Debtor agreed the Chapter 13 Trustee shall be entitled to procure a buy sell agreement of the property subject to court approval. Debtor voluntarily entered into Doc. 206, and Debtor's attorney signed it. This Court has the inherent power to enforce the terms of a settlement agreement in litigation before it. *In re Brandt*, 19 Mont. B.R. 162, 168 (Bankr. D. Mont. 2001). The Trustee's Motion to sell Tracts 9 and 35 free and clear of liens is filed pursuant to the stipulation Doc. 206. This Court can and does hereby enforce that agreement.

Section 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*In re East Airport Dev., LLC,* 443 B.R. 823, 830 (9th Cir. BAP 2011); *In re PW, LLC*, 391 B.R. 25, 37(9th Cir. BAP 2008).

Debtor's attorney stated at the hearing that First Interstate Bank wants Tracts 9 and 35 sold. In addition, the stipulation (Doc. 206) authorizing the Chapter 13 Trustee to sell

11

Tracts 9 and 35 is signed on behalf of First Interstate Bank. This evidence appears to satisfy the requirement of § 363(f)(2) that the entity with an interest in the property consent to a sale free and clear of liens.

More support in the record exists to approve the pending sale under § 363(f)(3), which authorizes sale free and clear of a lien or interest if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property." The BAP construed § 363(f) and case law in *In re PW, LLC*, and the BAP held "that § 363(f)(3) does not authorize the sale free and clear of a lienholder's interest if the price of the estate property is equal to or less than the aggregate amount of all claims held by creditors who hold a lien or security interest in the property being sold." 391 B.R. at 41.

The only liens on Tracts 9 and 35 shown by the record are the claim of First Interstate Bank as successor to Mountain West Bank, and tax liens. Proof of Claim No. 4 set First Interstate Bank's claim secured by Tracts 9 and 35 is $13,903.64, plus some future costs and attorneys' fees. At the hearing Stoos answered the Court's question about the amount of First Interstate Bank's secured claim against Tracts 9 and 35 by stating that lien is approximately $16,000. The other lien shown by the record is for taxes in the amount of approximately $16,000. Thus, the record shows the total amount of lien debt against Tracts 9 and 35 is approximately $32,000. Administrative expenses are not included in § 363(f)(3).

The Court finds that the Trustee's proposed $57,000 sale of Tracts 9 and 35 free

and clear of liens satisfies § 363(f)(3) because the sale price is greater than the value of all liens on such property. Based on the binding effect of the confirmed Plan, and Debtor's stipulation (Doc. 206) with the Chapter 13 Trustee and First Interstate Bank, this Court finds and concludes that the Trustee's Motion satisfies the requirements of § 363(f)(2) and § 363(f)(3) for sale of Tracts 9 and 35 free and clear of liens. The Trustee's Motion to sell free and clear is based on the stipulation agreed to by the Debtor and First Interstate Bank, and the confirmed Plan's provision for surrender of Lots 9 and 35 if the Debtor failed to sell within the allowed time means that there would be nothing left over for the estate under the confirmed Plan.

**IT IS ORDERED** a separate Order shall be entered overruling the Debtor's objections; granting the Chapter 13 Trustee's Motion to Sell Real Tracts 9 and 35 Free and Clear Liens (Doc. 217); and approving the Trustee's Final Application (Doc. 223) to pay professional fees in the sum of $3,420 to Kyle Haynie of Russell Country Realty.

/s/ Ralph B. Kirscher
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge